Honolulu, March 21, 1878.

---

*G. T. HARKNESS, Master of American Bark " H. N. Carlton," *vs.* ASWAN & CO.

ADMIRALTY APPEAL.

MARCH, 1878.

HARRIS, C. J.; JUDD and McCULLY JJ.

A ship, being chartered for a specific sum for the voyage, was wrecked near port of destination: cargo was lost, but passengers were saved : carrying of passengers was the main object of the charter :

Held, that in Admiralty the charter-money could be apportioned *pro rata itineris*, by deducting from the full sum stipulated a reasonable amount for cargo not delivered, and for expenses in bringing passengers to port of destination.

OPINION OF THE COURT, BY JUDD J.

THIS is a libel *in personam* to recover the sum of $9,000, the

*Not previously reported.

amount of a charter-party of the American Bark "H. N. Carlton," of which vessel the respondents were charterers for a voyage from Hongkong, China, to Honolulu. The vessel was stranded on the Island of Molokai, on the night of the 28th of January, and became a wreck. The passengers were all saved and brought to Honolulu, but the cargo was lost. The respondents claim that as the ship was chartered for a specific sum for the voyage, the failure to deliver the cargo has defeated the claim for the charter-money.

### BY THE COURT.

It has often been held, both in England and in the United States, that when a ship is chartered for a specific sum for the voyage and a part of the cargo only is delivered, the rest being lost by a peril of sea, in an action of covenant on the charter-party there can be no apportionment of freight.

We are of the opinion that in Admiralty recovery can be had according to the benefit received, in case of a partial fulfillment of the contract. The later authorities establish the view that where there has been a partial execution of the contract, the charter-money can be apportioned upon an implied promise to pay *"pro rata itineris peracti."* The charter of this vessel is one for both passengers and cargo, and the fact that the master of the vessel guarantees to carry 350 Chinese passengers in his vessel of 872 tons burden, and did actually transport 369 such passengers, makes it clear that the carrying of passengers was the main object of the charter. But as the condition of payment was the delivery at Honolulu of both cargo and passengers, and as the cargo has not been delivered, the libellant is not entitled to the full sum stipulated for.

It is said, that the common law favors the unity and entirety of contracts.

But as Ware, J., says in The Erie, 3 Ware, 229, "The maritime law easily renders contracts divisible, when the justice and equity of a case require it."

The justice and equity of this case, as it seems to us, requires that we should treat this contract as divisible, and we do so by deducting from the full sum stipulated a reasonable amount for

the cargo not delivered, and for the expenses in bringing the passengers from the place of wreck at Molokai to Honolulu.

We find that for 200 tons of cargo, such as chairs and light packages, a freight of $2.50 is reasonable—as it is in proof that where a vessel is seeking cargo (as this one was,) at Hongkong, freight of this character is carried for almost a nominal sum, and often for $2.50 a ton. We also find that there were 170 tons of bricks laden on board, some whole and some broken and chipped. We do not consider good the position of libellant, that nothing should be allowed for this, because by the custom of Hongkong the charterers were to find ballast, for the charter contains no such stipulation, and the libellant agreed to furnish his ship equipped for the voyage. But the Court is furnished with no evidence upon which to base an allowance for this portion of the cargo, and we do not undertake to conjecture what sum might be a reasonable freight on it. We are therefore obliged to allow nothing for the bricks.

As to firewood, we think that the excess over what was not consumed by the passengers, say 100 cords, ought to be treated as cargo, but in default of any testimony to guide us in determining what would be a reasonable freight upon it, we are forced to allow nothing.

We find that there should also be deducted the sum paid the schooner "Kinau,"' for transporting 107 passengers from Molokai to Honolulu, at the rate of $3 per man : also that the same rate should be allowed respondents for 94 passengers brought down on the "Nettie Merrill." The remainder of the men were brought down by the U. S. S. "Pensacola," for which no charge was made. It was the duty of the libellant to provide transportation for the passengers to Honolulu, if possible. But it seems that 94 men came down in the "Nettie Merrill" no bargain having been made.

On the claim being presented to the respondents they should have referred it to the libellant for adjustment. The impression left upon the Court is that, though the "Nettie Merrill's" bill is for $500, the respondents will be holden to her for only as much as we adjudicate to be reasonable. We also allow $100 to respondents, the price at which the cargo sold at auction at the instance of the libellant.

SUMMARY.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Allow for 200 tons light cargo at $2.50 | | | | | | | ...$ | 500 |
| " | " | passage of 107 men per Kinau" at $3 | | | | | | 321 |
| " | " | " | 94 | " | " | Nettie Merrill" at 3 | | 282 |
| " | " | proceeds of cargo | | | | | | 100 |

$1,203

which sum deducted from $9,000, the amount of the charter, leaves $7,797, for which sum judgment may be entered, as well as for costs of this appeal. Costs of first trial as allowed by Mr. Justice McCully.

*T. C. MacDowell* for libellant.

*E. Preston* and *C. Brown* for respondents.

Honolulu, March 19, 1878.